Chris Johnson, Plaintiff,
  Pro Se
1748 Millcreek Way
Salt Lake City, Utah 84106
801-484-6522
cajphs@yahoo.com

U.S. COURTS
JUN 30 2015
Rcvd_____Filed_____Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SOUTHERN DIVISION

| | |
|---|---|
| CHRIS JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 4:15-CV-238-REB |
| V. ) | |
| ) | |
| BEEHIVE FEDERAL CREDIT UNION; ) | |
| ADVANTAGE PLUS FEDERAL CREDIT ) | JURY TRIAL DEMANDED |
| UNION; CAPITAL EDUCATORS FEDERAL ) | |
| CREDIT UNION; CONNNECTIONS ) | |
| CREDIT UNION; CORNERSTONE CREDIT ) | |
| UNION; IDAHO STATE FEDERAL CREDIT | |
| UNION; LEWIS CLARK CREDIT UNION; | |
| IDAHO CREDIT UNION LEAGUE, INC; | |
| LEAGUE SERVICES, INC; SHANE | |
| BERGER; BRENT NEIBAUR; TODD | |
| ERICKSON; PATRICK VAUGHN; PAULA | |
| REEDY; ROBERT TAYLOR; VALERIE | |
| GUENTHER; DR. JANE CLARK; DR. | |
| LARRY NEZNANSKI; DENNIS LUVAAS; | |
| JANE KINN BUSER; AND BARBARA | |
| OLIC-HAMILTON; | |
| | |
| Defendants | |

1

Plaintiff, Chris Johnson, hereby complains against the named Defendants, as follows:

PARTIES

Plaintiff is a resident of Salt Lake County in the State of Utah.

Defendants Beehive Federal Credit Union ("Beehive"), Advantage Plus Federal Credit Union ("Advantage Plus"), Capital Educators Federal Credit Union ("Capital Educators"), Connections Credit Union ("Connections"), Cornerstone Credit Union ("Cornerstone"), Idaho State Federal Credit Union ("ISU"), and Lewis Clark Credit Union ("Lewis Clark") are credit unions organized under the laws of the United States or the State of Idaho. Beehive maintains its principal office in Madison County, State of Idaho. Advantage Plus, Connections and ISU maintain their principal offices in Bannock County, State of Idaho. Capital Educators maintains its principal office in Ada County, State of Idaho. Cornerstone maintains its principal office in Canyon County, State of Idaho. Lewis Clark maintains its principal office in Nez Perce County, State of Idaho.

The Idaho Credit Union League, Inc. (the "League"), and its affiliate, League Services, Inc. ("LSI"), are corporations organized under the laws of the State of Idaho. The League and LSI maintain their joint principal office in Ada County, State of Idaho.

Defendant Shane Berger ("Berger) is a resident of Madison County, State of Idaho. Defendants Brent Neibaur ("Neibaur") and Robert Taylor ("Taylor") are residents of Bannock County, State of Idaho. Defendant Valerie Guenther ("Guenther") is a resident of Nez Perce County, State of Idaho. Defendant Linda Chatfield ("Chatfield") is a resident of Kootenai County, State of Idaho.

Defendants Dr. Jane Clark, Dr. Larry Neznanski, Dennis Luvaas, Jane Kinn Buser, Barbara Olic-Hailton, Todd Erickson, Paula Reedy, and Patrick Vaughn are residents of Ada County, State of Idaho.

## JURISDICTION

This case is appropriately brought in federal court under diversity jurisdiction because each of the Defendants is a resident of, or is domiciled in, the State of Idaho, and Plaintiff is a resident of the State of Utah, and because the matter in controversy exceeds $75,000.

## VENUE

Venue is proper in this Court and Division because a substantial part of the events that gave rise to the causes of action set forth herein occurred in this District and Division.

## GENERAL ALLEGATIONS

1. Plaintiff was the Chief Executive Officer ("CEO") of the League, a trade association of credit unions, and its affiliate, LSI, from July 1, 2013, until November 22, 2013. The general objectives relating to the activities of the League and LSI are set by a Board of Directors (the "Board"), whose members are elected by the constituent credit unions of the League.

2. During Plaintiff's tenure, he worked to rationalize and improve certain aspects of the operation of the League and LSI, of the relationships and unity among the member credit unions, of the value of the services that credit unions provide to their members, of the validity of the policy positions that support the viability of the credit union charter, and of the League's ability to articulate effectively the value of credit unions to policymakers. This work of Plaintiff was based upon the following matters and occurrences, among others:

    a.    The need to provide a stable and sustainable financial base for the operation of the League and LSI. For several years prior to Plaintiff's tenure, the consolidated budget of the League and LSI either had not balanced or had scarcely balanced.

    b.    The need for LSI to provide useful, high quality and cost-effective services to member credit unions. This need was evident from complaints that Plaintiff received from two members of the Board and from CEOs of other credit unions LSI's services were deficient.

    c.    The fact that one of Idaho's largest credit unions had recently, for one or more years, lost its federal tax exemption and had paid federal income taxes. This occurrence presented an existential predicament for the credit union movement in Idaho because the cornerstone of credit unions' federal tax exemption is that without the exemption credit unions cannot be financially viable institutions, and yet the continued financial success of the taxpaying credit union in Idaho had not, in fact, been jeopardized.

    d.    The complaint by Defendant Reedy, a member of the Board, that she detested Idaho Central Credit Union and Westmark Credit Union, two of Idaho's largest credit unions, because they employed oppressive tactics in competing with smaller credit unions.

    e.    The complaint by Defendant Guenther, a member of the Board that she abhorred Potlatch No. One Federal Credit Union because it used unfair competitive tactics.

    f.    The expressions of disdain by Defendant Berger, Chair of the Board, against Mountain America Credit Union, a large Utah-based credit union that is an associate member of the League, and for other large Utah-based credit unions because they encroach on, or threaten to compete in, Idaho communities that have traditionally been served by Idaho-based credit unions.

    g.    Communications from senior staff members of two of Idaho's representatives in Congress that the representatives found some of Idaho credit unions' lobbying efforts to be

4

counter-productive and/or amateurish and/or and untimely because the lobbying efforts were initiated with respect to hypothetical or non-existent legislative issues.

    h.    The fact that the League and LSI had redundant staff in some functional areas and insufficient staff in other areas.

Addressing these matters, among others, was important and necessary to promote the short-term and long-term success of the League and LSI.

    3. Plaintiff applied for the position of CEO of the League and LSI in December of 2012 and interviewed for the position with the Board in April of 2013. On the day of the interview, Plaintiff was offered the job, which he accepted. On the same day, after Plaintiff had been offered the job, Defendant Berger confided to Plaintiff that the deliberations of the Board concerning the CEO position were characterized by a split of the Board into two factions. According to Defendant Berger, one faction, comprised of Board members who were members of the Church Of Jesus Christ Of Latter-Day Saints, or the Mormon Church, favored having Plaintiff, who is a member of the Mormon Church, as CEO. The other faction, consisting of members of the Board who were not Mormons, favored having as CEO Brad Schwartzentruber, an applicant who was CEO of a prominent Idaho-based credit union, Northwest Christian Credit Union.

    4. Plaintiff brought to the position of CEO substantial relevant experience. His experience included being a litigation and financial services attorney in New York and Washington, D.C., for the law firm of Cadwalader, Wickersham & Taft, a managing attorney for the Federal Home Loan Mortgage Corporation, and governmental affairs vice-president for the Credit Union National Association, the national trade association with which the League was affiliated.

5. During Plaintiff's tenure as CEO, he regularly sought to contact Defendant Berger, in his role as Chair of the Board, to seek guidance on matters. Plaintiff's efforts to contact the recently divorced Defendant Berger were generally unsuccessful, as Berger was frequently absent from his office and unavailable. Initially, Defendant Berger was avidly seeking to contact, meet, and date women in an effort to find a new wife. Subsequently, Defendant Berger was frequently unavailable, being engaged in obtaining a religious divorce from his first wife and courting, getting engaged to, marrying, and taking honeymoons with a new wife, Jean Mickelson Berger.

6. Plaintiff assiduously and competently applied his experience and abilities to fulfilling the duties of CEO, including working on the important matters set forth in Paragraph 2. In spite of Plaintiff's conscientious and effective work, on November 22, 2013, the Board terminated Plaintiff's employment.

7. At all times referred to herein, each individual Defendant was a resident of the State of Idaho. Each individual Defendant continues to be a resident of the State of Idaho. At all times referred to herein, each credit union Defendant, the League and LSI maintained its principal office in the State of Idaho. Each credit union Defendant, the League and LSI continues to maintain its principal office in the State of Idaho.

8. At all times referred to herein:

    a.    Defendant Berger was the CEO of Beehive, was a member of the League Board, and acted in his own capacity and for and on behalf of Beehive, the League and LSI.

    b.    Defendant Chatfield was the CEO of Public Employees, was a member of the League Board, and acted in her own capacity and for and on behalf of Public Employees, the League and LSI.

    c.    Defendant Erickson was CEO of Capital Educators, was a member of the League Board, and acted in his own capacity and for and on behalf of Capital Educators, the League and LSI.

    d.    Defendant Guenther was CEO of Lewis Clark, was a member of the League Board, and acted in her own capacity and for and on behalf of Lewis Clark, the League and LSI.

    e.    Defendant Neibaur was CEO of Advantage Plus, was a member of the League Board, and acted in his own capacity and for and on behalf of Advantage Plus, the League and LSI.

    f.    Defendant Reedy was CEO of Cornerstone, was a member of the League Board, and acted in her own capacity and for and on behalf of Cornerstone, the League and LSI.

    g.    Defendant Taylor was CEO of ISU, was a member of the League Board, and acted in his own capacity and for and on behalf of ISU, the League and LSI.

    h.    Defendant Vaughn was an executive officer of Connections, was a member of the League Board, and acted in his own capacity and for and on behalf of Connections, the League and LSI.

9. At all times referred to herein:

    a.    Defendant Neznanski was a director of Capital Educators and acted in his own capacity and for and on behalf of Capital Educators.

    b.    Defendant Clark was a director of Capital Educators and acted in her own capacity and for and on behalf of Capital Educators.

    c.    Defendant Luvaas was a director of Capital Educators and acted in his own capacity and for and on behalf of Capital Educators.

    d.    Defendant Buser was a director of Capital Educators and acted in her own capacity and for and on behalf of Capital Educators.

e. Defendant Olic-Hamilton was a director of Capital Educators and acted in her own capacity and for and on behalf of Capital Educators.

## FIRST CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

10. Plaintif realleges Paragraphs 1 through 9 and incorporates them herein by this reference.

11. In the week prior to a planning meeting of the Board scheduled for November 6 and 7, 2013, held at the office of the League and LSI in Boise, Idaho, Plaintiff and Defendant Berger prepared the agenda for the meeting.   Plaintiff and Berger agreed that at the conclusion of the meeting the Board and Plaintiff would set objectives for Plaintiff for the purpose of rationalizing the priorities of the League and LSI and for providing an agreed-upon basis for a subsequent evaluation of Plaintiff's performance.

12. At the conclusion of the planning meeting, defendant Berger, accompanied by Defendant Guenther, came to Plaintiff's office to see Plaintiff.   Defendants stayed in Plantiff's office for about three minutes and departed.   Defendant Berger spoke; Defendant Guenther said nary a word.

13. Defendant Berger told Plaintiff that the Board was dissatisfied with Plaintiff's work on the matters set forth in Paragraph 2.   Defendant Berger further stated that the Board would not be engaging in a discussion of objectives with Plaintiff, but rather would evaluate Plaintiff's performance in addressing the matters set forth in Paragraph 2 in accordance with objectives determined solely by the Board.

14. Defendant Berger further told Plaintiff that the Board could not evaluate Plaintiff's job then because maritial duty called Defendant Berger to leave Boise immediately to take Jean Mickelson Berger, his new wife, on a second honeymoon to Hawaii. Defendant Berger further stated that he would provide the performance evaluation sometime after his return from his second honeymoon with Jean Mickelson Berger.

15. Defendant Berger's statement that he had to depart Boise forthwith to embark upon a second honeymoon with Jean Mickelson Berger was untrue. In fact, Defendant Berger tortuously and cruelly left Plaintiff emotionally and physically twisting in the wind while Berger spent a few more days in Idaho before departing for his second honeymoon with Jean Mickelson Berger. Immediately after meeting with Plaintiff on November 7, Defendant Berger returned to his home to his home in Rexburg, Idaho. Defendant Berger then returned to the office of the League and LSI on or about November 10, 2913, and parked his automobile in a reserved space at the office and departed from the office to the Boise Airport, from where he traveled to Hawaii.

16. On or about November 20, 2013, Defendant Berger returned to Boise from his Hawaiian second honeymoon with Jean Mickelson Berger and came to the office of the League and LSI. At that time he retrieved his automobile from the reserved space at the office and returned to his home in Rexburg, Idaho.

17. Neither when Defendant Berger parked his automobile at the offices of the League and LSI to depart for Hawaii nor when he retrieved his automobile after returning to Boise from his second honeymoon did Defendant Berger enter the offices to visit Plaintiff.

18. On November 22, 2013, Defendant Berger, accompanied by Defendant Erickson, came to the office of the League and LSI and entered Plaintiff's office. Defendant Berger announced that Plaintiff's employment was being terminated forthwith because of the Board's dissatisfaction with Plaintiff's efforts to address the matters set forth in Paragraph 2, and that Plaintiff had to leave the office immediately. Defendant Berger had Plaintiff immediately escorted from the League and LSI office by Defendant Erickson.

19. In all of Defendant Berger's actions relating to Plaintiff commencing with the preparation for the meeting of November 6 and 7 and continuing through November 22, 2013, Defendant Berger acted for and on behalf of each of the following persons:

a. Defendant Neibaur;

b. Defendant Erickson;

c. Defendant Reedy;

d. Defendant Vaughn;

e. Defendant Taylor;

f. Defendant Guenther; and

g. Defendant Chatfield.

20. In his actions relating to Plaintiff commencing with the preparation for the meeting of November 6 and 7 and continuing through November 22, 2013, Defendant Berger acted intentionally or with reckless disregard for the effect of his actions on Plaintiff. Defendant Berger also engaged in such conduct outrageously, and maliciously, and in bad faith.

21. As a result of Defendant Berger's actions, including his tortuously and cruelly leaving Plaintiff to twist in the wind for two weeks, Plaintiff suffered severe adverse emotional, physiological and physical harm. Any reasonable person would have known that taking such actions would cause severe adverse emotional, physiological and physical harm.

22. WHEREFORE, Plaintiff prays for judgment, jointly and severally, against each of the Defendants, excluding Defendants Neznanski, Clark, Luvaas, Buser and Olic-Hamilton, as follows:

    a.    General damages in the amount of $500,000; and

    b.    Punitive damages in the amount of $250,000.

## SECOND CAUSE OF ACTION

## DEFAMATION

23. Plaintif realleges Paragraphs 1 through 9 and incorporates them herein by this reference.

24. On or about September 2, 2013, Plaintiff met with Defendant Taylor in the office of ISU to discuss certain aspects of services provided by LSI to ISU. While Plaintiff was in the office of ISU, Defendant Taylor apprised Plaintiff that some members of the Board held the erroneous belief that Plaintiff was biased against non-Mormons. When Plaintiff asked Defendant Taylor about Defendant Taylor's understanding of the origin of this belief on the part of some members of the Board, Defendant Taylor explained to Plaintiff that it was based upon Plaintiff's elimination of the position with the League and LSI of a former employee, one LaRaye O'Brien ("O'Brien"), who was not an adherent of the Mormon faith.

11

25. Plaintiff is informed and believes, and upon such information and belief alleges that repeatedly after the elimination of her position with the League and LSI, O'Brien spoke to and communicated in writing with Defendants Guenther and Chatfield and told Defendants Guenther and Chatfield that Plaintiff was biased against non-Mormons and because of his bias had eliminated O'Brien's position with the League and LSI. O'Brien made these statements about Plaintiff's purported bias without any basis for believing them to be true. Defendants Guenther and Chatfield republished O'Brien's statements about Plaintiff's purported bias to members of the Board, also without any basis for believing them to be true. Defendant Berger republished O'Brien's statements about Plaintiff's purported bias to still other members of the Board, also without any basis for believing them to be true.

26. The statements of Defendants Guenther, Chatfield and Berger were false. The false statements of Defendants Guenther, Chatfield and Berger were also defamatory and/or cast Plaintiff in a false light because they reflected negatively on his character and/or fitness to lead the League and LSI. The conduct of each of the Defendants Guenther, Chatfield and Berger was also outrageous and/or malicious and/or in bad faith.

27. The statements of Defendants Guenther, Chatfield and Berger damaged the reputation of Plaintiff and were a factor in the loss of his employment and income.

28. WHEREFORE, Plaintiff prays for judgment against Defendants Guenther, Chatfield, Berger, Lewis Clark, Beehive, the League, and LSI, jointly and severally, as follows:

    a.    General damages in the amount of $500,000;

    b.    Special damages in the amount of $1,200,000; and

    c.    Punitive damages in the amount of $250,000.

## THIRD CAUSE OF ACTION

## DEFAMATION

29. Plaintif realleges Paragraphs 1 through 9 and incorporates them herein by this reference.

30. On or about September 16, 2013, Plaintiff and representatives of credit unions that comprise the League membership ("League Representatives") traveled to Washington, D.C. The League Representatives and Plaintiff went to Washington to attend a few days of meetings with, and to listen to presentations by, members of Idaho's congressional delegation, staff of credit unions' federal regulatory agency, staff of credit unions' national trade association, and experts on the practices and history of the legislative and executive branches of government. Presenters who spoke to the League Representatives were affiliated with both the Democratic and Republican political parties and held a diverse array of political viewpoints.

31. The experts on the practices and history of the legislative and executive branches of government who spoke to the League Representatives were well-known Republicans. During the presentation by one of these speakers, Defendants Buser and Olic-Hamilton apparently were shocked to hear an iota or two of political perspective that differed from their own perspectives, notwithstanding the fact that they were in a city where the expression of diverse political perspectives is as ordinary as the blossoming of cherry trees in springtime.

32. Defendants Buser and Olic-Hamilton conspicuously and nosily left in the middle of the presentation which occasioned their shock, in a display of boorish incivility. They later told League Representatives that Plaintiff was, in his representation of Idaho credit unions' political interests, politically biased against Democrats and in favor of Republicans.

33. On or about October 1, 2013, Defendant Neznanski sent a letter to Defendant Berger in which Defendant Neznanski wrote that Plaintiff was, in his representation of Idaho credit unions' political interests, politically biased against Democrats and in favor of Republicans. Defendant Erickson received a copy of the letter from Defendant Neznanski.

34. In sending the letter to Defendant Berger, Defendant Neznanski acted for and on behalf of each of the following persons:

   a. Defendant Clark;

   b. Defendant Luvaas;

   c. Defendant Buser; and

   d. Defendant Olic-Hamilton.

35. Plaintiff is informed and believes, and upon such information and belief alleges that Defendant Erickson republished the statements of Defendants Neznanski, Clark, Luuvas, Busic, and Olic-Hamilton about Plaintiff's purported political bias to other members of the Board and that Defendants Berger and Reedy republished the statements of Defendant Neznanski of the same tenor to still other members of the Board.

36. Defendants Clark, Luuvas, Buser, Olic-Hamilton, and Neznanski published their statements about Plaintiff's purported political bias to members of the Board without any basis for believing them to be true. Defendants Erickson, Berger and Reedy republished the same statements about Plaintiff's purported bias also without any basis for believing them to be true.

37. The statements by Defendants Buser, Olic-Hamilton, Neznanski, Clark, Luvaas, Erickson, Berger, and Reedy were false. The false statements of these Defendants were also

14

defamatory and/or cast Plaintiff in a false light because they reflected negatively on his integrity and/or fitness to lead the League and LSI. The conduct of each of the Defendants Buser, Olic-Hamilton, Neznanski, Clark, Luvaas, Erickson, Reedy, and Berger was also outrageous and/or malicious and/or in bad faith.

38. The statements of Defendants Buser, Olic-Hamilton, Neznanski, Clark, Luvaas, Erickson, Reedy, and Berger damaged the reputation of Plaintiff and were a factor in the loss of his employment and income.

39. WHEREFORE, Plaintiff prays for judgment against Defendants Neznanski, Clark, Luvaas, Buser, Olic-Hamilton, Erickson, Berger, Reedy, Capital Educators, Cornerstone, Beehive, League, and LSI, jointly and severally, as follows:

    a.    General damages in the amount of $500,000;

    b.    Special damages in the amount of $1,200,000; and

    c.    Punitive damages in the amount of $250,000.

## PRAYER FOR OTHER RELIEF

40. Plaintiff also prays for such other relief as the Court may deem just, proper, and equitable.

## DEMAND FOR JURY TRIAL

41. Plaintiff demands a jury trial on all issues.

DATED the 29th day of June, 2015.

By _____
Chris Johnson
Plaintiff, Pro Se

VERIFICATION

Chris Johnson, being duly sworn, deposed and states: I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matter, I believe them to be true.

By _____

Chris Johnson

ACKNOWLEDGEMENT

STATE OF UTAH           )
                        ) SS.
COUNTY OF SALT LAKE     )

The foregoing instrument was acknowledged before me this 29th day of June, by Chris Johnson.

Notary Public _____

Printed Name Terra Nicole Ramey

My Commission Expires: 02/02/2019

Notarial Stamp



NOTARY PUBLIC
TERRA NICOLE RAMEY
681613
COMMISSION EXPIRES
FEBRUARY 2, 2019
STATE OF UTAH

16